1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

LAURA ROMERO,

         Plaintiff,

   v.

CAROLYN W. COLVIN,

        Defendant.

Case No. 14-cv-02046-MEJ

**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 16, 29

## INTRODUCTION

Plaintiff Laura Romero ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of Defendant Carolyn W. Colvin ("Defendant"), the Acting Commissioner of Social Security, denying Plaintiff's claim for disability benefits. Pending before the Court are the parties' cross-motions for summary judgment. Dkt. Nos. 16, 29. Pursuant to Civil Local Rule 16-5, the motions have been submitted on the papers without oral argument. Having carefully reviewed the parties' positions, the Administrative Record ("AR"), and relevant legal authority, the Court hereby **DENIES** Plaintiff's motion and **GRANTS** Defendant's cross-motion for the reasons set forth below.

## BACKGROUND

Plaintiff was 54 years old on the date the Administrative Law Judge's ("ALJ") decision was issued. AR 24, 180. She attended college for four years but did not finish her degree. AR 33. She has worked as a laborer, health care provider, radio station board operator, and telemarketer. AR 163. She last worked as a professional telephonic fundraiser from 2004 to 2009. AR 51, 170.

On January 6, 2009, Plaintiff presented to The Kitchen, Inc., a medical and dental clinic, stating that she wanted to "get healthy." AR 239. At that time, "diabetic eyes" was diagnosed and a diabetic eye examination was recommended. AR 239. On April 24, 2009, Plaintiff was treated at The Kitchen for abdominal pain and rectal bleeding. AR 238. It was observed that Plaintiff "looks miserable." AR 238. It was noted that she had a history of coronary artery disease and three stents in her heart. AR 238.

On June 18, 2009, Plaintiff presented to The Kitchen with complaints of ankle swelling and constant fatigue, in addition to continuing abdominal and rectal symptoms. AR 234. She had a painful left heel and could barely walk. AR 236. Plantar facsciitis[1] and diverticulosis[2] were diagnosed, as well as chest pain and diabetes. AR 235. Plaintiff was given shoe inserts and a prescription for orthopaedic shoes. AR 236. A subsequent treatment note from The Kitchen states that Plaintiff was treated for bronchitis and an exacerbation of chronic obstructive pulmonary disease on July 23, 2009. AR 233.

On March 26, 2010, Plaintiff presented to an Emergency Room ("ER") with complaints of chronic cough, shortness of breath, abdominal pain, and lethargy. AR 276-87. She reported not taking her cardiac medications because she had no health insurance. AR 276. Plaintiff's physical exam was largely normal, with normal pulse, blood pressure, and respiratory rate, but revealed diminished bilateral breath sounds and bilateral anterior and posterior wheezing. AR 283-84. It was observed that Plaintiff appeared uncomfortable and in pain, she was "unkept" and physically dirty, and had a "strong smell." AR 283. Plaintiff was otherwise well appearing, alert and oriented. AR 283. Examination was almost entirely normal, including extremities, psychiatric,

---

[1] "Plantar fasciitis typically causes a stabbing pain in the bottom of your foot near the heel. The pain is usually worst with the first few steps after awakening, although it can also be triggered by long periods of standing or getting up from a seated position." http://www.mayoclinic.org/diseases-conditions/plantar-fasciitis/basics/symptoms/con-20025664 (last visited June 4, 2015).
[2] "Diverticulitis can cause severe abdominal pain, fever, nausea and a marked change in your bowel habits." http://www.mayoclinic.org/diseasesconditions/diverticulitis/basics/definition/con-20033495 (last visited June 4, 2015).

United States District Court
Northern District of California

and cardiovascular.  AR 283.  A chest x-ray was seen as largely normal, only significant for borderline cardiomegaly.  AR 284, 294.  Results of an electrocardiogram were termed "borderline."  AR 295.  Chronic bronchitis, emphysema and obstructive pulmonary disease were diagnosed, which were treated with Albuterol, Atrovent (bronchodilater), Prednisone (corticosteroid), Zofran (for nausea and vomiting), Morphine Sulfate, and Doxycycline.  AR 286.  When she was discharged the next day, Plaintiff ambulated with assistance and was told to follow-up with her primary care physician in two days.  AR 285-86.  She was given prescriptions for Albuteral Sulfate, Doxycycline, Prednisone and Vicodin.  AR 281.

Plaintiff re-established care at The Kitchen on September 22, 2010, reporting that she was homeless.  AR 232.  She complained of pain in her legs and feet and problems with her eyes, i.e., they were "spasming."  AR 232.  An optometry visit was recommended and Tylenol 2 was prescribed for pain.  AR 232.

According to a September 24, 2010 treatment note from The Kitchen, Plaintiff complained of an earache and was placed on a priority list for dental care.  AR 231.  On October 19, 2010, Plaintiff complained of left knee pain.  AR 230.  An examination of Plaintiff's left knee revealed moderate effusion and diffuse tenderness, but described it as "stable."  AR 230.  An x-ray was recommended and the clinic lent Plaintiff a wheelchair.  AR 230.

On November 17, 2010, Plaintiff reported that she was still experiencing a lot of pain and had difficulty walking.  AR 229.  Results of a left-knee x-ray were negative and the effusion in her knee was reduced.  AR 229.  An examination of Plaintiff's right foot revealed macerated tissue, multiple cracks, calloues and fungal disease.  AR 229.  A Magnetic Resonance Imaging study of Plaintiff's left knee was scheduled for November 26, 2010, and a podiatry appointment was scheduled for February 14, 2011.  AR 229.

Plaintiff also established care at Golden Family Health Center.  AR 251.  On March 10, 2011, she reported having an myocardial infarction nine years previously, precipitated by a burning sensation and palpitations in her chest.  AR 251.  Plaintiff expressed concern because she had experienced these same symptoms during the past week.  AR 251.  A cardiology consult was

recommended, but Plaintiff said she could not afford it.  AR 253.

On May 4, 2011, Plaintiff presented to the ER with complaints of burning pain in her chest and throat.  AR 271-74.  Acute bronchitis was diagnosed and treated.  AR 272-73.

Plaintiff presented to Golden Valley Health Center ("Golden Valley") on May 10, 2011, complaining of hand pain and bronchitis.  AR 245-47.  On examination, Plaintiff was considered well-nourished, well developed, alert and awake, and normal head, eyes, ears, nose, mouth, and throat.  AR 246.  Plaintiff's breathing was found "to be effortless and normal" with faint expiratory wheezes but breath sounds were normal in volume.  AR 246.  Her heart rate was normal as well as her skin and lymph nodes, and no neurological issues were noted.  AR 246. Acute bronchitis and acute upper respiratory infections of unspecified site were diagnosed.  AR 246.

On June 14, 2011, Plaintiff completed an exertional questionnaire.  AR 192-94.  She indicated she was homeless and lived in a camper.  AR 192.  Plaintiff stated that at night, she could barely walk.  AR 192.  On an average day, she walked to the bus, library, interviews, and food banks, but it was hard because she experienced pain in both her legs and back.  AR 192. Plaintiff stated she walked all over town, but was exhausted with swollen feet and could not sit or stand for more than 10 minutes.  AR 192-93.  Plaintiff believed she could lift 10 to 15 pounds, and reported that she could carry her backpack, which was 10 to 12 pounds, goes shopping when possible, and swept, did the dishes, garbage, dust, laundry and gardens.  AR 193.  After 10 to 15 minutes of doing housework, she experienced pain and dizziness.  AR 194.  Plaintiff stated she could drive an hour, and that she did yard work to plant seeds, water, and pull weeds.  AR 193. Plaintiff stated she had a lot of pain and was worried that she was going have a stroke or another heart attack.  AR 194.  She also reported shortness of breath, upset stomach, and nerve damage on her left side.  AR 194.

An examination on June 29, 2011 found Plaintiff was well nourished, with effortless and normal breathing, normal heart. The examination was generally normal.  AR 368.  Morbid obesity, coronary atherosclerosis of unspecified type of vessel native or graft, and dyspepsia and other

United States District Court
Northern District of California

specified disorders of function of stomach were diagnosed.  AR 368.

On July 4, 2011, Plaintiff presented to the ER with chest and throat pain.  AR 272-75. Acute bronchitis was diagnosed.  AR 272.  Plaintiff's respiratory tests were largely noted as normal and she was discharged, being able to ambulate without assistance.  AR 274.

On July 13, 2011, state agency physician A. Nasrabadi, M.D., reviewed Plaintiff's records to date and evaluated her coronary artery disease and chronic obstructive pulmonary disease.  AR 297-303.  Dr. Nasrabadi noted Plaintiff's claim of a heart attack, diverticulosis, rheumatic fever, bronchitis, and osteoarthritis on the left side.  AR 302.  Dr. Nasrabadi looked at records from Golden Valley and The Kitchen.  AR 302.  Dr. Nasrabadi outlined numerous records, noting largely negative results to objective exams (10/19/10 left knee with moderate effusion; 11/17/10 left knee x-ray results file negative; 3/31/11 HEENT normal, lungs clear, heart RRR, no gallop; 5/10/11 HEENT normal, faint expiratory wheezes, BS normal, heart RR, S1 and S2 normal, neurological exam reveals no meningeal signs).  AR 302-03.  Dr. Nasrabadi also noted there was no evidence of record showing a mental impairment.  AR 303.  From this, Dr. Nasrabadi opined Plaintiff was only "partially credible".  AR 303.  Dr. Nasrabadi concluded Plaintiff could perform the requirements of light work but should avoid respiratory irritants.  AR 303.

On December 8, 2011, state agency physician S. Reddy, M.D., reviewed the same records previously reviewed by Dr. Nasrabadi and affirmed Dr. Nasrabadi's opinion.  AR 85, 318-19.

After her case was reviewed by the state agency, Plaintiff submitted additional records from The Kitchen going back to November 2005.  AR 328-63.  This evidence documents Plaintiff's treatments for bronchitis and other respiratory problems, foot impairments, diabetes, nausea and pain.  AR 328-63.  In July 2006, Plaintiff was referred to psychiatry for probable depression and anxiety.  AR 355.  Plaintiff also submitted additional records from Golden Valley, which documents her treatment for dental pain and bronchitis/respiratory infection from June 29, 2011, to November 27, 2011.  AR 367-73.

On December 7, 2011, Plaintiff presented to the ER for treatment after apparently missing a step.  AR 389-413.  The report shows a largely normal exam, but with an edema on the left foot

United States District Court
Northern District of California

with tenderness, but Plaintiff had the ability to flex and extend toes, limited secondary to pain. AR 393.  X-rays of her left foot revealed arthritic changes at the first metatarsophalangeal joint, ankle and talonavicular joint in addition to a large heel spur.  AR 400.  An ER physician diagnosed a fracture in Plaintiff's calcaneal spur and advised her to follow up with her physician.  AR 403.

Plaintiff presented to St. Luke's Family Practice ("St. Luke's") as a new patient on December 12, 2011.  AR 364.  She was observed to be "walking with difficulty."  AR 364.  Plaintiff reported the morphine given her in the ER had made her vomit and she asked for low-cost pain medications.  AR 364.  R. J. Heck, M.D., prescribed Ultram and instructed Plaintiff to stay off her feet for a week, after which she should begin gradual weight bearing on her left foot.  AR 365-66.  Plaintiff's other medications included Ibuprofen, Colace, Ranitidine, Proventil MDI, Neurotin, and Prednisone.  AR 364.

On February 22, 2012, Plaintiff sought care at the ER for left lower abdominal pain, which radiated around to her back, and nausea.  AR 414.  Plaintiff appeared "very uncomfortable."  AR 414, 416.  An examination revealed tenderness in the left lower quadrant of her abdomen and an abdominal/pelvic ultrasound revealed moderate diverticulosis.  AR 416-17, 427.  The examiner noted that Plaintiff was a "vague historian", but was otherwise in a normal mood and affect with normal psychiatric behavior.  AR 416.  Plaintiff's pain was treated with medications and she was discharged from the ER with Phenergan and Norco for nausea and pain, respectively. AR 418.

On February 23, 2012, Plaintiff presented to St. Luke's for treatment of back and joint pain.  AR 375.  Chronic pain syndrome was diagnosed and she was advised to adhere to her Pain Management Program.  AR 376.  The exam was otherwise unremarkable, with normal psychiatric findings.  AR 374-76.

Plaintiff was brought to the ER by emergency personnel on February 26, 2012, with complaints of worsening pain in her left lower quadrant that radiated into the groin and the front of her left leg.  AR 452-53, 464, 630.  Plaintiff "stated she had so much pain and weakness, she could not move."  AR 453.  The examiner observed that Plaintiff was "not completely forthcoming"

6

1   with regard to medication usage.  AR 453.  Plaintiff requested pain medication.  AR 453.

2   However, imaging studies were largely negative, with the doctor noting the only significant

3   finding being a urinary tract infection.  AR 453.  Plaintiff was found to be able to ambulate with a

4   steady gait.  AR 453.  An examination revealed "exquisite tenderness with rebound" in Plaintiff's

5   left lower quadrant and a "very tender" lower pelvis/left inguinal.  AR 456.  Results of an

6   electrocardiogram were termed "abnormal" because it revealed marked sinus bradycardia,

7   rightward axis, and possible inferior infarct.  AR 457.  A portable chest x-ray revealed

8   cardiomegaly with no changes since March 2011.  AR 457, 490.  An abdominal/ pelvic ultrasound

9   revealed moderate diverticulosis.  AR 491.  A general surgeon assessed left groin pain, associated

10  with lower back pain, and noted "numbness" on Plaintiff's anterior thigh.  AR 464, 468.  Although

11  this physician did not recommend surgery, Plaintiff was admitted to the hospital for observation

12  because of her elevated white blood cell count and abdominal pain.  AR 458.  According to the

13  inpatient records, dated February 27-28, 2012, Plaintiff was observed to be "anxious, with

14  grimacing and guarded pain behaviors".  AR 546-48.  She was also observed to be "[e]asily

15  agitated but not belligerent currently."  AR 600.  A lumbar Magnetic Resonance Imaging study

16  revealed a focal disc protrusion centrally and on the right side at L4-L5 with extension of the focal

17  disc protrusion into the right neural foramen, which was flattening the anterior and right lateral

18  aspect of the thecal sac at L4-L5.  AR 491.  Throughout her lumbar spine, Plaintiff had mild

19  multilevel degenerative disc and facet changes.  AR 491.  When the doctor explained the results to

20  Plaintiff and offered a neurosurgical consultation, Plaintiff decided she wanted to be discharged,

21  disconnected her monitor, pulled out her IV, and walked off the floor independently, with no

22  apparent difficulty.  AR 453.

23          Plaintiff followed-up with her hospital visit at St. Luke's.  AR 377.  A March 1, 2012

24  treatment note shows that a physical examination revealed tenderness and pain in her lumbar

25  spine, and that Plaintiff was given an injection of Ketorolac.  AR 379-80.

26          On March 22, 2012, Plaintiff presented to St. Luke's with severe pain in her back and left

27  leg, anxiety, fatigue and gait disturbance.  AR 381-82.  A musculoskeletal exam revealed

United States District Court
Northern District of California

28

tenderness in Plaintiff's back and left thigh and swelling in her left knee with moderately reduced range of motion. AR 383. Plaintiff was given an injection of Ketorolac and was advised to walk daily for at least 30 minutes, five days a week. AR 384. At that time, Plaintiff's medications included Gabapentin, Baclofen, Lidoderm Patch, Latuda, and Vicodin, as well as medications for Plaintiff's respiratory impairments and diabetes. AR 384. An ER evaluation was recommended for Plaintiff's significant pain, reduced range of motion, and black stools. AR 384.

On April 3, 2012, Plaintiff reported improvement with Gabapentin, and her dosage was increased. AR 385-87.

On June 9, 2012, Plaintiff presented to the ER with shortness of breath and middle back pain radiating around to the right upper abdominal quadrant. AR 640. An examination revealed "tiny air exchange, probably pneumonia," and tenderness in the mid-femur area. AR 642. Bronchitis and lower left leg pain and swelling were diagnosed and treated. AR 644. Blood tests revealed her creatinine was elevated, indicating kidney disease, and her glomerular filtration rate levels were low, as well as an elevated white blood cell count. AR 644, 651-52. An electrocardiogram revealed possible interior infarct, age undetermined, but an anterior infarct could not be ruled out; these results were termed "abnormal." AR 672. Plaintiff was discharged with medications, including Norco, Gabapentin, Percocet, Naproxen, and an inhaler, and was advised to follow up with her primary care physician for evaluation of left lower extremity swelling and pain. AR 639-40, 646.

**SOCIAL SECURITY ADMINISTRATION PROCEEDINGS**

On April 19, 2011, Plaintiff filed a claim for Disability Insurance Benefits, alleging disability beginning on October 1, 2007. AR 70, 132-50. She later amended the onset date to May 13, 2009. AR 53. On July 19, 2011, the Social Security Administration ("SSA") denied Plaintiff's claim, finding that Plaintiff did not qualify for disability benefits. AR 79-83. Plaintiff subsequently filed a request for reconsideration, which was denied on December 9, 2011. AR 85-90. On February 10, 2012, Plaintiff requested a hearing before an ALJ. AR 92-93. ALJ Timothy Snelling conducted a hearing on September 7, 2012. AR 29-69. Plaintiff testified in person at the

hearing and was represented by counsel, Jeffrey Milam.  AR 29.  The ALJ also heard testimony

from Vocational Expert Stephen Schmidt.  AR 29.

## A.    Plaintiff's Testimony

At September 7, 2012 hearing, Plaintiff testified that she is ambidextrous, but she has a

hand brace due to nerve damage that affects her whole left side.  AR 35.  Plaintiff stated that she

has a wheelchair because she was paralyzed and could not walk.  AR 38.  Plaintiff was proscribed

Tylenol and has health care through the Medically Indigent Adult program.  AR 41.  She

experiences pain in her left heel and constant fatigue.  AR 40-41, 46.  Plaintiff testified that she

does not use any illegal drugs, but stated she occasionally smoked marijuana for pain and to

prevent vomiting.  AR 41-42.

Plaintiff testified she has memory and concentration problems due to her medication, that

she can barely walk every morning, and that she is unable to work due to her nausea and the pain

in her leg.  AR 57-59.  Plaintiff stated she could lift 6.5 pounds, the weight of her backpack, and

use her right hand any time, but her left hand for only a couple of minutes.  AR 59.  She estimated

she could be on her feet for 10 minutes at a time, could not sit very long, and had to lie down

about 50% of the time, but every day was different.  AR 56.  She could not work an eight-hour day

and she would have difficulty getting to a workplace because of her nausea and leg pain.  AR 57-

59.

## B.    Vocational Expert's Testimony

Prior to examining the vocational expert, the ALJ noted the possibility of Plaintiff seeing a

mental consultative examining doctor.  AR 59-60.  Plaintiff stated that she was willing to see one,

and the ALJ stated he would let her know at the end of the hearing if he would refer her.  AR 60-

61.

Next, the ALJ presented the following hypothetical to the vocational expert:

> I want you to assume an individual who is able to perform light
> work but because of a number of medical problems can perform no
> more than occasional climbing . . . of ladders, rope, and scaffolding.
> Okay?  Occasional ramps and stairs.  Occasional kneeling and
> crouching and crawling and stooping.  Okay?  And occasional

United States District Court
Northern District of California

> balancing.
>
> In addition to that I want you to assume that the person must avoid . . . concentrated exposure, now what I mean by that is persistent, intractable, unrelenting, constant exposure to pulmonary irritants. Okay?  And no more than occasional . . . face-to-face interaction with the general public.

AR 62.  The vocational expert testified that such a person could perform Plaintiff's former work as a telephone solicitor.  AR 62.  Because he incorporated the mental limitation of no more than occasional face-to-face interaction with the public, the ALJ determined that a mental examination might not be necessary and deferred to Plaintiff's attorney.  AR 67.  Counsel responded: "The mental health is fine."  AR 68.

Mental limitations of no face-to-face interaction with the public was incorporated into the hypothetical.  AR 62.  The ALJ noted he was going to do a psychiatric examination, but since he incorporated some degree of mental limitation in the hypothetical, there might be no justification for a mental examination.  AR 67.  The ALJ stated he would defer to counsel, asked what counsel wanted to do, to which counsel responded, "The mental health is fine, Judge."  AR 67-68.  The ALJ then explained that he would await further information from Plaintiff's attorney and would consider Plaintiff's testimony, the vocational expert testimony, the attorney's arguments, and the new documentation in making his decision.  AR 68.

**C.      The ALJ's Findings**

The regulations promulgated by the Commissioner of Social Security provide for a five-step sequential analysis to determine whether a Social Security claimant is disabled.[3]  20 C.F.R. § 404.1520.  The sequential inquiry is terminated when "a question is answered affirmatively or negatively in such a way that a decision can be made that a claimant is or is not disabled." *Pitzer v. Sullivan*, 908 F.2d 502, 504 (9th Cir. 1990).  During the first four-steps of this sequential inquiry, the claimant bears the burden of proof to demonstrate disability. *Valentine v. Comm'r*

---

[3] Disability is "the inability to engage in any substantial gainful activity" because of a medical impairment which can result in death or "which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

*Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009).  At step five, the burden shifts to the Commissioner "to show that the claimant can do other kinds of work."  *Id.* (quoting *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)).

The ALJ must first determine whether the claimant is performing "substantial gainful activity," which would mandate that the claimant be found not disabled regardless of medical condition, age, education, and work experience.  20 C.F.R. § 404.1520(a)(4)(i), (b).  Here, the ALJ determined that Plaintiff had not performed substantial gainful activity since 2008.  AR 20.

At step two, the ALJ must determine, based on medical findings, whether the claimant has a "severe" impairment or combination of impairments as defined by the Social Security Act.  20 C.F.R. § 404.1520(a)(4)(ii).  If no severe impairment is found, the claimant is not disabled.  20 C.F.R. § 404.1520(c).  Here, the ALJ determined that Plaintiff had the following severe impairments: chronic obstructive pulmonary disease, diabetes mellitus, obesity, plantar fasciitis, left heel calcaneal fracture, gastroesophageal reflex disease, diffuse osteoarthritis, chronic pain syndrome, coronary artery disease, cardiomegaly, history of mental illness, and multiple somatic complaints.  AR 20.

If the ALJ determines that the claimant has a severe impairment, the process proceeds to the third step, where the ALJ must determine whether the claimant has an impairment or combination of impairments that meet or equals an impairment listed in the regulations ("the Listings").  20 C.F.R. Part 404, Subpt. P, App. 1.  20 C.F.R. § 404.1520(a)(4)(iii).  If a claimant's impairment either meets the listed criteria for the diagnosis or is medically equivalent to the criteria of the diagnosis, he is conclusively presumed to be disabled, without considering age, education and work experience.  20 C.F.R. § 404.1520(d).  Here, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets the Listings.  AR 21.

Before proceeding to step four, the ALJ must determine the claimant's Residual Functional Capacity ("RFC").  20 C.F.R. § 404.1520(e).  RFC refers to what an individual can do in a work setting, despite mental or physical limitations caused by impairments or related symptoms.  20 C.F.R. § 404.1545(a)(1).  In assessing an individual's RFC, the ALJ must consider all of the

11

1   claimant's medically determinable impairments, including the medically determinable

2   impairments that are nonsevere.  20 C.F.R. § 404.1545(e).  Here, the ALJ determined that Plaintiff

3   has the RFC to lift and carry 20 pounds occasionally and 10 pounds frequently; sitting and

4   standing and walking six hours each in an eight-hour day; occasional climbing of ladders, ropes,

5   and scaffolds; occasional kneeling, stooping, balancing, crouching, and crawling; and no more

6   than occasional face-to-face interaction with the general public.  AR 22.  The ALJ further found

7   that Plaintiff must avoid concentrated exposure, i.e., intense, continuous, intractable, unremitting

8   exposure, to pulmonary irritants.  *Id.*

9          The fourth step of the evaluation process requires that the ALJ determine whether the

10   claimant's RFC is sufficient to perform past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv);

11   404.1520(f).  Past relevant work is work performed within the past 15 years that was substantial

12   gainful activity, and that lasted long enough for the claimant to learn to do it.  20 C.F.R. §

13   404.1560(b)(1).  If the claimant has the RFC to do his past relevant work, the claimant is not

14   disabled.  20 C.F.R. § 404.1520(a)(4)(iv).  Here, the ALJ determined that Plaintiff could perform

15   past relevant work as a telephone solicitor as it does not require the performance of work-related

16   activities precluded by her RFC.  AR 24.  As the ALJ found that Plaintiff could perform her past

17   relevant work, he determined that she is not disabled, and therefore did not reach the fifth step of

18   the analysis.[4]

19   **D.     ALJ's Decision and Plaintiff's Appeal**

20          On October 26, 2012, the ALJ issued an unfavorable decision finding that Plaintiff was not

21   disabled.  AR 18-24.  This decision became final when the Appeals Council declined to review it

22   on February 27, 2014.  AR 1-6.  Having exhausted all administrative remedies, Plaintiff

23   commenced this action for judicial review pursuant to 42 U.S.C. § 405(g).  On November 22,

24

25   [4] In the fifth step of the analysis, the burden shifts to the Commissioner to prove that there are
     other jobs existing in significant numbers in the national economy which the claimant can perform
26   consistent with the claimant's RFC, age, education, and work experience.  20 C.F.R.
     §§404.1520(g); 404.1560(c).  The Commissioner can meet this burden by relying on the testimony
27   of a vocational expert or by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404,
     Subpt. P, App. 2; *Lounsbury v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006).

28

United States District Court
Northern District of California

2014, Plaintiff filed the present Motion for Summary Judgment.  Dkt. No. 16.  On February 19, 2015, the Commissioner filed a Cross-Motion for Summary Judgment.  Dkt. No. 29.

## LEGAL STANDARD

This Court has jurisdiction to review final decisions of the Commissioner pursuant to 42 U.S.C. § 405(g).  The ALJ's decision must be affirmed if the findings are "supported by substantial evidence and if the [ALJ] applied the correct legal standards."  *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (citation omitted).  "Substantial evidence means more than a scintilla but less than a preponderance" of evidence that "a reasonable person might accept as adequate to support a conclusion."  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (quoting *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995)).  The court must consider the administrative record as a whole, weighing the evidence that both supports and detracts from the ALJ's conclusion.  *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989) (citation omitted).  However, "where the evidence is susceptible to more than one rational interpretation," the court must uphold the ALJ's decision.  *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (citation omitted).  Determinations of credibility, resolution of conflicts in medical testimony, and all other ambiguities are to be resolved by the ALJ.  *Id.*

Additionally, the harmless error rule applies where substantial evidence otherwise supports the ALJ's decision.  *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1990).  A court may not reverse an ALJ's decision on account of an error that is harmless.  *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055-56 (9th Cir. 2006)).  "'[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.'"  *Id.* (quoting *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)).

## DISCUSSION

In her Motion, Plaintiff raises three issues: (1) there is no medical foundation for the ALJ's RFC finding; (2) the ALJ's credibility findings are legally insufficient; and (3) the ALJ failed to fully and fairly develop the record.  The Court shall consider each in turn.

United States District Court
Northern District of California

1    **A.      RFC**

2         Plaintiff first argues that the ALJ improperly relied on the opinion of the State agency

3    physician, Dr. Nasrabadi.  Pl.'s Mot. at 9.  In his decision, the ALJ states that Dr. Nasrabadi

4    "reviewed the complete documentary record and provided a detailed explanation with references

5    to the evidence in the record to support the opinion."  AR 24.  Plaintiff concedes that this

6    statement "is true as far as it goes," but notes that the ALJ devoted four paragraphs to a summary

7    of Plaintiff's treatment records, the majority of which (286 pages) were not reviewed by Dr.

8    Nasrabadi.  Pl.'s Mot. at 9.  Dr. Nasrabadi reviewed Plaintiff's medical records up through May

9    2011, but Plaintiff argues the bulk of her treatment records (AR 389-675) are from after that date.

10   Pl.'s Mot. at 10.  She maintains that the ALJ's opinion has "absolutely no medical foundation" for

11   any period after May 2011, and therefore represents an improper substitution of the ALJ's lay

12   judgment for that of the medical expert, which should not be allowed to stand.  *Id.* (citing *Benecke*

13   *v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004)). Plaintiff further argues that the ALJ does not state

14   upon what evidence his finding of Plaintiff's mental capacity is based, and there is no evidence in

15   the record to support the ALJ's finding that Plaintiff's only mental limitation was from face-to-

16   face interaction with the general public.  Pl.'s Mot. at 10.

17        In response, Defendant argues that a review of the record in this case shows that the ALJ

18   made a reasoned decision supported by the medical opinion and substantial evidence in the record.

19   Def.'s Mot. at 1.  Defendant maintains that the ALJ was not presented with conflicting medical

20   opinions in this case; instead, "the ALJ gave weight to the only opinion of record and found an

21   RFC that was even more restrictive than that opinion."  Def.'s Mot. at 2.

22        RFC is the most a claimant can do despite her limitations.  20 C.F.R. § 404.1545(a).  It is

23   assessed by considering all the relevant evidence in a claimant's case record.  *Id.*; *see also*

24   *Richardson v. Perales*, 402 U.S. 389, 401-02(1971).  When a case is before an ALJ, it is the ALJ's

25   responsibility to assess a claimant's RFC.  20 C.F.R. § 404.1546(c); *see also Vertigan v. Halter*,

26   260 F.3d 1044, 1049 (9th Cir. 2001) ("It is clear that it is the responsibility of the ALJ, not the

27   claimant's physician, to determine residual functional capacity.").  "Generally, the more consistent

28

United States District Court
Northern District of California

14

1    an opinion is with the record as a whole, the more weight [the ALJ] will give to that opinion." 20

2    C.F.R. § 416.927(c)(4).

3         Defendant admits that the ALJ relied on the opinion of Dr. Nasrabadi.  As a nonexamining

4    physician, Dr. Nasrabadi's opinion is presumptively entitled to less weight than the opinions of

5    treating and examining physicians.  *See, e.g., Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir.

6    1996) (explaining that a treating physician's opinion is entitled to greater weight than the opinion

7    of a nontreating, nonexamiming physician).  However, the Court finds that Dr. Nasrabadi's

8    opinion is supported by other evidence in the record.

9         In *Morgan v. Commissioner of Social Security Administration*, the Ninth Circuit held that

10   the opinion of a nonexaming, nontreating doctor constituted substantial evidence because the

11   doctor's opinion was supported by other facts in the record.  169 F.3d 595, 601 (9th Cir. 1999)

12   (citing *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).  For example, Morgan's testimony

13   directly conflicted with the assessments of his treating physicians, who reported significant

14   improvement in his condition.  *Id.*  Consequently, the Ninth Circuit held that because the evidence

15   in that case was "susceptible to more than one rational interpretation, the ALJ's conclusion must

16   be upheld."  *Id.* (citing *Andrews*, 53 F.3d at 1041; *Magallanes*, 881 F.2d at 750).

17        Here, Plaintiff's medical history contains an RFC assessment from only one source.  Dr.

18   Nasrabadi concluded Plaintiff could perform the requirements of light work but should avoid

19   respiratory irritants.  AR 303.  As noted by Defendant, the ALJ gave weight to Dr. Nasrabadi's

20   opinion, but found an RFC that was even more restrictive.  AR 20-24.  The ALJ's decision was

21   supported by other independent evidence of record.  AR 20-24.  For example, as the ALJ noted,

22   several medical records suggest there is no objective bases to Plaintiff's complaints, describing the

23   complaints as somatic complaints.  AR 43.  Indeed, the objective medical record contradicts

24   Plaintiff's claims of being unable to walk.  In February 2012, Plaintiff went to the hospital

25   claiming that she could not move, asked for pain medication, and was admitted.  AR 453.  Once

26   her largely normal objective test results were given to her, she pulled out her own IV and walked

27   out of the room without any assistance.  AR 453.  Many other objective records also noted

28

United States District Court
Northern District of California

Plaintiff's largely normal exam results. *See, e.g.,* AR 229, 246, 249, 252, 270, 274, 283-84, 368, 374-76, 416, and 453. Despite this, the ALJ, giving some credit to Plaintiff's complaints, gave a greater restrictions than any opinion in record, posturally limiting Plaintiff to only occasional climbing, kneeling, and balancing. AR 22-24.

Similarly, the ALJ noted daily activities that were also consistent with a range of light RFC. AR 23, 192-93. These include looking for work, going to job interviews, and walking to the library and food banks. AR 23, 192-93. Plaintiff also described being able to do laundry, clean, and garden. AR 192-93. These activities also support the ALJ's RFC, as well as medical record notes showing she could ambulate effectively. AR 453.

Plaintiff argues that because Dr. Nasrabadi considered the record through May 2011, and not through the date of the ALJ decision on April 2012, that the decision does not constitute substantial evidence. Pl.'s Mot. at 9. Plaintiff notes that Dr. Nasrabadi did not consider her lumbar MRI that showed a protruding disc that flattened the sac that normally protects the nerve roots at L4-L5, and an x-ray that showed arthritic changes in Plaintiff's left foot. *Id.* (citing AR 400, 457, 491). She also notes that Dr. Nasrabadi did not review additional objective findings related to Plaintiff's heart impairment, including an ECG that revealed "marked" sinus bradycardia or records showing Plaintiff's treatment for respiratory infections, shortness of breath, nausea, chronic pain syndrome, back pain and radicular pain. *Id.* (citing AR 389-675). However, the ALJ reviewed all the evidence of record, and it is the ALJ's duty, not that of a doctor, to determine RFC. *See Vertigan*, 260 F.3d at 1049. Moreover, Plaintiff fails to point to any opinion or other evidence which makes Dr. Nasrabadi's opinion or the ALJ decision unreasonable. While Plaintiff had a foot fracture in December 2011, it apparently healed, with largely normal results and range of motion noted in February 2012, where Plaintiff was noted to ambulate effectively and be a "vague historian" and not completely forthcoming. AR 416, 453.

*Morgan* makes it plain that, under the circumstances, Dr. Nasrabadi's opinion constitutes substantial evidence. Moreover, because the ALJ considered the record as a whole and, even if the evidence is "susceptible to more than one rational interpretation," the ALJ's decision must be

16

upheld.  Accordingly, the ALJ's RFC determination must be upheld.

**B.**      **Credibility**

Next, Plaintiff argues that the ALJ rejected Plaintiff's testimony for reasons that are inadequate.  Pl.'s Mot. at 10.  Plaintiff testified that she could not walk and experienced constant fatigue, leg pain, and nausea.  AR 38, 40, 46.  The ALJ rejected this testimony based on Plaintiff's daily activities, and also found that Plaintiff's symptoms were not supported by the objective medical evidence.  AR 23.  As to her daily activities, Plaintiff argues they have no bearing on her credibility because they are consistent with her testimony.  Pl.'s Mot. at 11.  For instance, as to her walking abilities, Plaintiff stated that she walked to the bus, job interviews, the library, food banks and "all over town," but when she walked, she had to rest every 10 minutes.  AR 192.  As to the job-seeking purpose of some of her activities, Plaintiff maintains that the fact that she looked for work does not show she was able to work but, instead, shows her willingness to work.  Pl.'s Mot. at 12.  She also notes that she did not indicate she was looking for full-time work but, on the contrary, testified she could not work full-time.  *Id.* (citing AR 56-57).  Plaintiff further argues that the ALJ's finding that her testimony was inconsistent with the objective medical evidence, by itself, is not legally sufficient to discredit her.  *Id.*  Further, because the ALJ relied on Dr. Nasrabadi's opinion, his decision is misleading because Dr. Nasrabadi did not review most of the objective evidence.  *Id.* at 13.

In response, Defendant argues that a review of the record shows that the ALJ properly considered Plaintiff's testimony, and to the extent it conflicted with the RFC, found it not fully credible.  Def.'s Mot. at 4.

A two-step analysis is used when determining whether a claimant's testimony regarding their subjective pain or symptoms is credible.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  First, it must be determined "whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'"  *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)).  A claimant does not need to "show that her impairment could reasonably be

United States District Court
Northern District of California

17

expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Id.* (quoting *Smolen*, 80 F.3d at 1282).

Second, if the claimant has met the first step and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* (quoting *Smolen*, 80 F.3d at 1281). "The ALJ must state specifically which testimony is not credible and what facts in the record lead to that conclusion." *Smolen*, 80 F.3d at 1284. Where the ALJ "has made specific findings justifying a decision to disbelieve an allegation of excess pain, and those findings are supported by substantial evidence in the record," courts must not engage in second-guessing. *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989). However, a finding that the claimant lacks credibility cannot be premised wholly on a lack of medical support for the severity of his pain. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 793 (9th Cir. 1997) (citing *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir. 1986) ("'Excess pain' is, by definition, pain that is unsupported by objective medical findings.").

Factors that an ALJ may consider in weighing a claimant's credibility include: "[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [his] testimony and [his] conduct, claimant's daily activities, [his] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which claimant complains." *Thomas*, 278 F.3d at 958-59. Here, the ALJ properly considered these factors in making an adverse credibility finding:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual capacity assessment. (Exs. 2F and 24F). The claimant also reported that he is independent in dressing, feeding, and hygiene, and able to take out the garbage, do laundry, and drive and put gasoline into his car (Ex. 5F, p.2). At the hearing, he admitted that he drove several times per day, transporting his children to and from school and track practice. He testified that he goes to the store with his wife, is active in his church, performs volunteer work, and plays video games.

1

2

> While the claimant has an excellent work history and earnings record, the medical records do not show that he is incapable of light exertional activity.

3    AR 27-28.

4        The Court finds that the ALJ provided specific, clear and convincing reasons for rejecting

5    Plaintiff's testimony.  The ALJ addressed how Plaintiff alleged inconsistent statements of

6    disability when compared to her admitted activities.  AR 23.  For example, Plaintiff stated she

7    could not sit or stand for more than 10 minutes.  AR 192.  However, she also stated that she walks

8    "all over town," goes shopping when she can, and sweeps, does the dishes, garbage, dusting,

9    laundry, and gardening.  AR 193.  Although Plaintiff stresses that she stated she could only sit and

10   stand for 10 minutes, she also stated she can drive an hour, and she did yard work to plant seeds,

11   water, and pull weeds.  AR 193.  The ALJ focused on these and other inconsistencies, including

12   daily activities of looking for work, going to job interviews, and walking to the library and food

13   banks.  AR 23, 192-93.  These inconsistencies were properly noted by the ALJ in finding Plaintiff

14   not credible.

15       Additionally, the ALJ noted during the hearing that the record included notes from

16   Plaintiff's doctors that Plaintiff had multiple somatic complaints.  AR 43.  The ALJ explained that

17   generally this means that "there's not really an objective medical basis for some of your

18   complaints."  AR 43; *see Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (noting

19   evidence of symptom exaggeration is a valid basis for discounting a claimant's claims of

20   disability).  Indeed, medical records showed behavior which called into question Plaintiff's

21   allegations of subjectively disabling symptoms.  Plaintiff was described as a "vague historian" and

22   "not completely forthcoming," and the records show that Plaintiff discharged herself and walked

23   out of the hospital without assistance after claiming that she could not move due to pain.  AR 416,

24   453.

25       Finally, while the failure of the medical record to fully corroborate a claimant's subjective

26   symptom testimony is not, by itself, a legally sufficient basis for rejecting such testimony, it is a

27   factor that the ALJ may take into account when making a credibility determination.  *Rollins v.*

28

United States District Court
Northern District of California

*Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc)).  Thus, the Court finds that the ALJ did not err when he considered the lack of objective evidence and objective functional restrictions as a factor in assessing Plaintiff's credibility.  Accordingly, the ALJ's credibility determination must be upheld.

**C.      Development of Record**

Finally, Plaintiff argues that the ALJ failed to fully and fairly develop the record.  Pl.'s Mot. at 13.  Plaintiff maintains that she adduced objective evidence suggesting the existence of a condition that could have a material impact on the ALJ's disability decision, including objective tests such as results of her lumbar MRI, foot x-ray, and two abnormal ECG reports.  *Id.* at 14.  Plaintiff argues the ALJ should have re-contacted her treating sources, referred her for consultative examinations, returned the record to the state agency for an updated opinion, or requested the testimony of a medical expert at the hearing.  *Id.* (citing SSR 96-5p, 1996 WL 374183, at *6 (July 2, 1996)).

In response, Defendant concedes that the ALJ has a "special duty to fully and fairly develop the record and to assure that the claimant's interests are considered."  Def.'s Mot. at 3 (quoting *Smolen*, 80 F.3d at 1288) (internal quotations omitted).  However, Defendant argues that the duty is triggered only where there is ambiguity about a documented, diagnosed illness during the relevant period.  *Id.*  Defendant maintains that the ALJ does not have a duty to develop the record with regard to issues that Plaintiff never raised, and therefore, the duty to further develop the record was not triggered in this case because Plaintiff was represented by counsel at the hearing, the ALJ reviewed all the diagnosed medical impairments and determined an appropriate RFC, there were no mental health records or diagnosis during the relevant period, and Plaintiff stated she was not mentally impaired.  *Id.* (citing AR 49, 303).  Without a mental health diagnosis during the relevant period, Defendant argues that the ALJ did not have any issue to develop.  *Id.*

"In Social Security cases, the ALJ has a special duty to develop the record fully and fairly and to ensure that the claimant's interests are considered, even when the claimant is represented by counsel."  *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001) (citations omitted); *Webb v.*

United States District Court
Northern District of California

1    *Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) ("The ALJ's duty to supplement a claimant's record

2    is triggered by ambiguous evidence, the ALJ's own finding that the record is inadequate or the

3    ALJ's reliance on an expert's conclusion that the evidence is ambiguous.").

4            However, it remains the claimant's duty to prove that she was disabled. *Mayes*, 276 F.3d

5    at 459 (citing 42 U.S.C. § 423(d)(5) (Supp. 2001) ("An individual shall not be considered to be

6    under a disability unless he furnishes such medical and other evidence of the existence thereof as

7    the Secretary may require")). The ALJ is only obligated to further develop the record if the

8    evidence is ambiguous or the record is inadequate. *Id.* at 459-60 ("An ALJ's duty to develop the

9    record further is triggered only when there is ambiguous evidence or when the record is

10   inadequate to allow for proper evaluation of the evidence."); *Rodriguez v. Astrue*, 2010 WL

11   3835683, *5 (N.D. Cal. Sep. 28, 2010).

12           At the third step in his analysis, the ALJ determined that Plaintiff did not have an

13   impairment identified in the Listings. AR 21. Plaintiff contends that the ALJ erred at this step

14   because the medical evidence implicates Listing 1.04[5] (Disorders of the Spine). Plaintiff notes

15   that her MRI indicated a herniated disc, and her examinations revealed numbness and pain. Pl.'s

16   Mot. at 15 (citing AR 384, 468, 491). However, a review of the records to which Plaintiff cites

17   shows that she was advised to maintain a well-balanced diet and walk daily for at least 30 minutes

18   for at least five days each week (AR 384); and although Plaintiff stated she "had so much pain and

19   weakness, she could not move," when the doctor offered a neurosurgical consultation, Plaintiff

20   decided she wanted to be discharged, disconnected her monitor, pulled out her IV, and walked off

21   the floor independently, with no apparent difficulty (AR 453, 491). Further, as discussed above,

22   the objective records as a whole note Plaintiff's largely normal examination results. *See* AR 229,

23   246, 249, 252, 270, 274, 283-84, 368, 374-76, 416, and 453. The ALJ also noted Plaintiff's daily

24   activities, including looking for work, going to job interviews, and walking to the library and food

25

26   [5] "Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis,
     osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise
27   of a nerve root (including the cauda equina) or the spinal cord." 20 C.F.R. § Pt. 404, Subpt. P,
     App. 1.

28

banks.  AR 23, 192-93.  Plaintiff also described being able to do laundry, clean, and garden.  AR 192-93.  Moreover, because he incorporated the mental limitation of no more than occasional face-to-face interaction with the public, and there was no evidence of a mental disability that met the Listings, the ALJ determined that a mental examination was not necessary.  AR 67.  Finally, at the hearing, the ALJ told Plaintiff's representative that he would keep the record open for one week so that Plaintiff could submit additional evidence.  AR 32.  Thus, Plaintiff had the opportunity to submit additional evidence to the ALJ, but chose not to do so.  "The fact that the ALJ kept the record open after the hearing for Plaintiff to submit additional evidence is sufficient to satisfy any duty to develop the record."  *Hernandez v. Astrue*, 2012 WL 4466580, at *10 (N.D. Cal. Sept. 26, 2012).

In this case, the record before the ALJ was neither ambiguous nor inadequate to allow for proper evaluation of the evidence.  The Court therefore finds that the ALJ had no duty to develop the record by diagnosing herniated discs.  *Mayes*, 276 F.3d at 459-60.  Accordingly, the Court finds that the ALJ fulfilled his duty to develop an adequate record, and substantial evidence supported the ALJ's decision that Plaintiff was not disabled.

## CONCLUSION

For the reasons stated above, the Court hereby **DENIES** Plaintiff's Motion for Summary Judgment and **GRANTS** Defendant's Cross-Motion for Summary Judgment.  Because there are no outstanding issues, the Court also **DENIES** Plaintiff's Motion for Remand.  The Clerk of Court shall enter judgment accordingly.

**IT IS SO ORDERED.**


Dated: June 4, 2015

_____
MARIA-ELENA JAMES
United States Magistrate Judge

United States District Court
Northern District of California

22